JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
Telephone: (415) 436-7200
Facsimile: (415) 436-7234
E-mail: Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAIME SALCEDO-MENDOZA,<br><br>Defendant. | No. CR 08-399 PJH<br><br>UNITED STATES' MOTIONS *IN LIMINE* TO:<br><br>(A) ADMIT DOCUMENTS FROM THE DEFENDANT'S A-FILE AS SELF-AUTHENTICATING PUBLIC RECORDS;<br><br>(B) ADMIT EVIDENCE THAT THE DEFENDANT WAS FOUND AT SAN MATEO COUNTY JAIL, INCLUDING EVIDENCE RELATED TO HIS MAY 24, 2008 ARREST;<br><br>(C) ADMIT THE DEFENDANT'S PRIOR STATEMENTS;<br><br>(D) ADMIT EVIDENCE OF THE DEFENDANT'S PREVIOUS ILLEGAL REENTRY CONVICTION;<br><br>(E) ADMIT EVIDENCE OF THE DEFENDANT'S PREVIOUS DRUG POSSESSION CONVICTIONS;<br><br>(F) ADMIT EXPERT TESTIMONY FROM A FINGERPRINT EXAMINER;<br><br>(continued) |

(G) ADMIT THE CERTIFICATE OF NON-EXISTENCE OF RECORD AS THE ABSENCE OF A PUBLIC RECORD

(H) PROHIBIT ANY REFERENCE TO WHY THE DEFENDANT REENTERED OR REMAINED IN THE UNITED STATES;

(I) PROHIBIT ANY REFERENCE TO THE DEFENDANT'S BACKGROUND AND PRIOR RESIDENCY;

(J) PROHIBIT ANY COLLATERAL ATTACK ON THE DEFENDANT'S PRIOR DEPORTATIONS OR REMOVALS;

(K) PROHIBIT ANY REFERENCE TO PENALTIES; AND

(L) EXCLUDE ALL WITNESSES EXCEPT THE CASE AGENTS

Trial Date: September 8, 2008
Time: 8:30 a.m.
Judge: The Hon. Phyllis J. Hamilton

## I. INTRODUCTION AND PROCEDURAL HISTORY

On June 5, 2008, the defendant was charged by Complaint with Illegal Reentry After Deportation in violation of 8 U.S.C. § 1326. On June 17, 2008, a grand jury returned an Indictment charging the defendant with violating § 1326. The defendant was arraigned on the Indictment on June 19, 2008, and pleaded not guilty. On August 14, 2008, the government will seek a superseding indictment, alleging that the defendant illegally reentered the United States after having been convicted of an aggravated felony. The government will seek this superseding indictment based on the Ninth Circuit's August 6, 2008 decision in *Garcia-Aguilar v. United States District Court for So. Dist. Calif, et al*, No. 07-70293 (9th Cir. August 6, 2008). On August 7, 2008 government counsel notified defense counsel that the government would seek a superseding indictment.

## II. STATEMENT OF FACTS

The defendant admitted to every element of this crime in a May 28, 2008 sworn statement after waiving his *Miranda* rights. He is a citizen of Mexico. He is not, and has never been, a citizen of the United States. He was deported twice and never received permission to reenter the United States.

The defendant was convicted of felony drug possession three times: twice in 1997, and again in 1998. Soon after, he was first deported from the United States on February 12, 1999. He reentered the country illegally after that, and was convicted of battery of emergency personnel and obstructing emergency personnel in 2001. On February 21, 2003, the defendant pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326 in the Northern District of California. In his plea agreement, he admitted that he had been deported twice, that he was not a United States citizen, and that he never received permission to enter the country. On May 15, 2003, he was sentenced to 24 months in custody.

The defendant was deported again on February 14, 2004. On May 24, 2008, he was arrested for use a fake driver's license and driving without a license. He was referred to federal authorities for prosecution while he was incarcerated at San Mateo County Jail and then charged in this case.

## III. MOTIONS *IN LIMINE*

### A. The Court Should Admit Documents From The Defendant's A-File As Self-Authenticating Public Records

The United States moves to admit as evidence at trial documents from the defendant's "A-File." A-Files are kept by immigration authorities at the Department of Homeland Security (DHS) and were previously kept by the Immigration and Nationalization Service, one of DHS's predecessors. A-Files contain documents reflecting most of an alien's immigration encounters, including prior deportations. DHS keeps an A-File for every alien. The government seeks to admit at trial the following documents from the defendant's A-File:

- Warrants of Removal/Deportation showing that the defendant was deported on February 12, 1999 and February 12, 2004;
- A sworn statement from an interview that the defendant gave to immigration authorities on May 13, 2002
- Sworn statements from two interviews that the defendant gave to immigration authorities on May 29, 2008; and
- Several of the defendant's fingerprint cards.

The government seeks admission of those documents in redacted form subject to Motions In Limine Nos. H-I, below.

Under Ninth Circuit precedent, A-Files are admissible as self-authenticating public records pursuant to Federal Rule of Evidence 803(8)(B). In *United States v. Loyola-Dominguez*, 125 F.3d 1315 (9th Cir. 1997), the Ninth Circuit affirmed a district court's admission of documents from the defendant's A-File.[1] The defendant argued that the district court had erred

---

[1]The Ninth Circuit has consistently held that A-File documents are admissible in § 1326 prosecutions. *See, e.g., United States v. Mateo-Mendez*, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (certificate of nonexistence properly admitted as absence of public record); *United States v. Sotelo*, 109 F.3d 1446, 1449 (9th Cir. 1997) (warrant of deportation properly admitted to prove alienage); *United States v. Contreras*, 63 F.3d 852, 857 (9th Cir. 1995) (same); *United States v. Hernandez-Rojas*, 617 F.2d 533, 534-35 (9th Cir. 1980) (same; law enforcement exception to public records rule did not apply because deportation is "ministerial, objective observation, which has inherent reliability because of the Government's need to keep records of the

by admitting two warrants of deportation, a prior warrant for the defendant's arrest, and a prior deportation order, arguing on appeal that they were hearsay. The Ninth Circuit rejected this argument, holding that the documents were properly admitted as public records. *Id.* at 1318.

The court found that even though A-File documents are made by law enforcement agents, they reflect only ministerial, objective observations. *Id.* at 1318. Thus, the Court held, they fall outside the law enforcement exception to the public records exception. *Id.* The court also held that A-File documents are self-authenticating and, therefore, do not require even an independent foundation to be admitted into evidence. *Id.* (documents admitted under public records exception do not require foundation because they are presumed trustworthy; opponent of public records has burden of establishing untrustworthiness).

Admitting A-File documents does not implicate the Sixth Amendment's Confrontation Clause. The Ninth Circuit has already addressed this issue and held that warrants of deportation are nontestimonial because they are not made in anticipation of litigation and are a routine, objective, cataloging of an unambiguous factual matter. *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1085 (9th Cir. 2005) (holding that warrant of deportation is public record under Rule 803(8)(B)). The court analogized the warrant of deportation to a birth certificate, holding that "[*United States v.* ]*Crawford* did not mean to require the doctor or nurse who actually filled out a birth certificate to testify as to its veracity." *Id.*

**B. The Court Should Admit Evidence That The Defendant Was "Found In The United States" At San Mateo County Jail, Including Evidence Related To His May 24, 2008 Arrest**

The government should be allowed to introduce evidence that the defendant was "found" at San Mateo County Jail after being arrested on May 24, 2008 for unlawfully using a driver's license and driving without a license.

The jury must receive some information about why the defendant was "found" by ICE agents. If the jury hears no evidence about why the defendant was arrested, it could assume that he was arrested in an ICE enforcement raid on factory workers or farm workers. Such an

---

movement of aliens").

assumption would undoubtedly prejudice the government, especially considering that raids on farms and factories have occurred with greater frequency over the past several months, and have received considerable attention from the local and national press. Accordingly, the government should be able to introduce testimony that the defendant came to the attention of ICE based on his contact with local law enforcement in an unrelated matter.

The government also should be allowed to admit evidence that the defendant had obtained a fraudulent driver's license and was driving a car, including an arrest report showing that he was arrested on those charges. The government will not use this evidence as proof of the defendant's character, but as proof that he knowingly remained in the United States after illegally reentering the country. FED. R. EVID. 404(b). His having a driver's license – even a fraudulent one – and having access to a car show that he "knowingly remained" in the United States. Those facts are highly probative proof and are not "substantially" outweighed by their prejudicial effect on the defendant. FED. R. EVID. 403.

### C. The Court Should Admit The Defendant's Prior Statements

During previous encounters with ICE and in court proceedings, the defendant gave voluntary statements attesting to his identity, his alienage, his prior deportations, and his lack of permission to reenter the United States. The government intends to offer these statements at trial as admissions of a party-opponent. FED. R. EVID. 801(d)(2)(A). Specifically, the United States intends to introduce the following statements that the defendant made:

#### 1. The Defendant's May 13, 2002 Sworn Statement

On May 13, 2002, the defendant was interviewed by immigration authorities. During that interview, he signed a waiver of rights and a Sworn Statement. He stated that he understood that (1) he had the right to remain silent, (2) anything he said could be used against him, (3) he had the right to speak with an attorney before questioning and to have an attorney present during questioning, (4) an attorney would be given to him free of charge if he could not afford one, and (5) he had the right to talk to consular officials of his country of citizenship.

The defendant then stated that his name was Jaime Salcedo-Mendoza, he was a citizen of Mexico, he was born in Mexico, and he never naturalized to become a United States citizen. He

also admitted that he entered the United States without a visa by walking through the desert, that he had been deported, and that he had never applied for permission to reenter the United States.

**2. The Defendant's February 21, 2003 Plea Agreement**

On February 21, 2003, the defendant pleaded guilty to illegally reentering the United States in violation of § 1326. The defendant stated that he was an alien, he was a citizen of Mexico, he was not a citizen of the United States, he had been deported from the United States on February 12, 1999, and he reentered the United States illegally without consent from INS on a date before April 22, 2003.

**3. The Defendant's February 21, 2003 Application For Permission To Enter Plea Of Guilty And Order Accepting Plea**

Also on February 21, 2003, the defendant signed an Application for Permission to Enter Plea of Guilty. In that document, the defendant stated that he unlawfully reentered the United States after being previously deported. He also admitted that he was guilty of violating § 1326.

**4. Statements That The Defendant Made At His February 21, 2003 Change Of Plea Hearing**

The government seeks to admit any statements that the defendant made at his February 21, 2003 change of plea hearing, and any questions that those statements responded to. The government has requested an expedited copy of the transcript of this hearing, and will provide a copy of it to defense counsel as soon as government counsel receives it.

**5. Statements That The Defendant Made At His May 15, 2003 Sentencing Hearing**

The government seeks to admit any statements that the defendant made at his May 15, 2003 sentencing, and any questions that those statements responded to. The government has requested an expedited copy of the transcript of this hearing, and will provide a copy of it to defense counsel as soon as it government counsel receives it.

**6. The Defendant's May 29, 2008 Sworn Statement**

On May 29, 2008, the defendant signed a Record of Sworn Statement. In that sworn statement, he admitted that he was a citizen of Mexico and was born in Mexico. He also

admitted that he last entered the United States on February 22, 2008, and that he had been deported in 1999 and 2004. He also admitted that he did not apply to the Attorney General for permission to reenter the country after being deported.

**7. The Defendant's Second May 28, 2008 Sworn Statement**

On May 13, 2002, the defendant signed a waiver of rights and a Sworn Statement. In the waiver of rights, he stated that he understood that (1) he had the right to remain silent, (2) anything he said could be used against him, (3) he had the right to speak with an attorney before questioning and to have an attorney present during questioning, (4) an attorney would be given to him free of charge if he could not afford one, (5) if he decided to answer questions without a lawyer, he would still have the right to stop answering questions at any time, (6) he had the right to stop answering questions at any time until he talked to a lawyer, and (7) he had the right to talk to consular officials of his country of citizenship.

In the Sworn Statement, the defendant admitted that he was Jaime Salcedo-Mendoza, was a citizen of Mexico, was born in Mexico, and never naturalized to become a United States citizen. He also admitted that he last entered the United States on February 22, 2008 without showing a legal document to enter. Finally, he stated that he had been deported twice, in 1999 and 2004, and that he had never applied for permission to reenter the United States.

**D. The Court Should Admit Evidence Of The Defendant's Previous Illegal Reentry Conviction**

The Court should admit evidence related to the defendant's prior felony conviction for illegal reentry as proof that he is an alien. If the defendant testifies, the government also should be able to use that conviction to impeach his credibility.

**1. The Court Should Admit Documents Related To The Defendant's Previous Illegal Entry Conviction As Substantive Evidence**

The court should admit the defendant's prior conviction for violating § 1326 because it will prove facts essential to this prosecution. Under Federal Rule of Evidence 803(22), evidence of a final judgement, entered after a trial or plea of guilty, is admissible to prove any fact essential to sustain the judgment. Under Ninth Circuit precedent, the government may use a

prior conviction for violating § 1326 in a subsequent prosecution under § 1326 as evidence that the defendant is an alien and that he was previously deported. *United States v. Bejar-Matrecious*, 618 F.2d 81, 84 (9th Cir. 1980) ("evidence of a prior conviction, even though founded on a plea of guilty, may be relevant in a subsequent criminal proceeding to establish material facts necessary to sustain the prior judgement"). In addition to proving the defendant's alienage, the defendant's prior conviction will prove knowledge and voluntariness. For example, admission of the conviction documents will show that the defendant knew where the border was when he crossed it and voluntarily remained in the United States because he had been convicted of illegal reentry and knew the consequences of reentering illegally again.

The government is not moving to admit evidence of this conviction to prove that the defendant acted in conformity with his previous conviction. The basic safeguard that a jury should not assume that "the defendant committed a crime once before, therefore he must have done it again" is less of a concern in § 1326 cases because the same facts that supported the previous conviction constitute an element of the current offense. In most § 1326 cases, including this one, the jury is told that the defendant was deported multiple times, meaning that he had to have *reentered* illegally at least once before. In sum, a previous illegal entry – and in most cases, a previous illegal *reentry* – is an inherent element of any illegal reentry case under § 1326.

**2. The Court Should Admit Documents Related To The Defendant's Previous Illegal Entry Conviction As Impeachment Evidence**

If the defendant testifies at trial, the United States should be allowed to demonstrate his lack of trustworthiness by impeaching him with his previous § 1326 conviction.

Under Federal Rule of Evidence 609(a)(1), a felony conviction "shall be admitted if the court determines that the probative value of admitting [it] outweighs its prejudicial value to the accused." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1088 (9th Cir. 2004) (admitting conviction for possession of marijuana for sale for impeachment purposes in § 1326 trial). The Ninth Circuit created a five-factor test for balancing the relative probativeness and unfair prejudice of a prior conviction. Under this test, this court should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship between the conviction and the defendant's

subsequent criminal history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Cook*, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979).

These factors favor admitting the defendant's prior § 1326 conviction as impeachment evidence. First, the Court should admit it as substantive evidence, as discussed above. Therefore, there will be no prejudice to the defendant if the government also uses it to impeach his credibility. Second, it is very recent – he was convicted just five years ago. Finally, if the defendant testifies, his credibility will be a central issue in the case and his character for honesty is a factor that the Court should weigh carefully. The importance of the defendant's testimony is crucial because he would presumably be called to testify only if he intended to claim that (1) he was involuntarily brought to the United States, (2) he did not knowingly remain in the United States, (3) he was never actually deported, (4) he was not an alien when he reentered, or (5) he had received permission to re-enter the United States, even though the Department of Homeland Security has no record of such permission being granted.

**E. The Court Should Admit Evidence Of The Defendant's Previous Drug Possession Convictions**

The government must now prove to the jury that the defendant was convicted of an aggravated felony before he was deported. *Garcia-Aguilar v. United States District Court for So. Dist. Calif, et al*, No. 07-70293 (9th Cir. August 6, 2008). As described below, multiple drug possession convictions constitute an aggravated felony. The defendant was convicted of three drug felonies before his first deportation. Therefore, the defendant's convictions are essential facts and the Court should admit them regardless of any prejudice to the defendant.

The defendant was convicted of felony possession of a controlled narcotic substance in violation of California Health and Safety Code § 11350(a) on October 15, 1997, a second time on December 17, 1997, and a third time on June 17, 1998. Each of those convictions predates his first deportation. Each of those convictions is an aggravated felony.

Under 8 U.S.C. § 1101(a)(43)(B), convictions for illicit trafficking in a controlled substance, including drug trafficking crimes under 18 U.S.C. § 924(c), are aggravated felonies.

Under § 924(c)(2), a "drug trafficking crime" includes any felony punishable under the Controlled Substances Act ("CSA"). The CSA defines a "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13). Violations of California Health and Safety Code § 11350(a) are felonies.

**F. The Court Should Admit Expert Testimony From A Fingerprint Examiner**

The United States moves to admit testimony of a fingerprint expert to identify the defendant as the person who was previously deported from the United States on February 12, 1999 and February 12, 2004. The Ninth Circuit recently affirmed an order permitting virtually identical fingerprint testimony in a virtually identical § 1326 case. *See United States v. Calderon-Segura*, 512 F.3d 1104, 1108-10 (9th Cir. 2008).

Under Federal Rule of Evidence 702, if specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. *Id.* An expert's opinion may be based on hearsay or based on facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. FED. R. EVID. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. FED. R. EVID. 704. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the discretion of the trial judge. *See United States v. Alonso*, 48 F.3d 1536, 1539 (9th Cir. 1995) (admitting expert testimony on an area – drug conspiracies – that was outside the scope of most jurors' common knowledge); *United States v. Lennick*, 18 F.3d 814, 821 (9th Cir. 1994) (upholding admission of expert testimony by law enforcement officers).

Here, the fingerprint expert's testimony will assist the trier-of-fact in determining a central issue in the case: whether the defendant, who was found in the Northern District of California and is now on trial, was previously deported. As set forth in the *Government's Notice of Expert Testimony*, the government expects that the expert witness it seeks to call will testify that he reviewed and examined numerous documents bearing fingerprint impressions from the defendant, including the warrants of deportation. He will testify that his opinion was established

by an analysis, comparison, and evaluation of the friction ridge detail on the items he reviewed. The government further expects that he will testify that the fingerprint impressions appearing on each document he reviewed and examined were made by the same individual. This evidence is permissible expert testimony because it is based on specialized knowledge and will assist the trier-of-fact to determine the essential questions of identity and prior deportation.

**G. Admit The Certificate Of Non-Existence Of Record As The Absence Of A Public Record**

The United States intends to introduce a Certificate of Non-Existence of Record ("CNR"), prepared by an authorized official at the Department of Homeland Security. The CNR certifies that there are no records in any of the Department's databases, files, or archives that the defendant has ever applied for, or been granted, permission to reenter the United States following his deportation. Federal Rule of Evidence 803(10) permits admission of a certification, in accordance with Federal Rule of Evidence 902, attesting to the absence of a record of a matter of which a record would be regularly made and preserved by a public office or agency.

The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of *Crawford v. Washington*, 124 S. Ct. 1354 (2004), and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution. *United States v. Cervantes-Flores*, 421 F.3d 825, 831-33 (9th Cir. 2005); *see also United States v. Mateo-Mendez*, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (holding that CNR was properly admitted under Rules 803 and 902). Accordingly, the Court should admit the CNR under Federal Rules of Evidence 803(10) and 902.

**H. The Court Should Prohibit Any Reference To Why The Defendant Reentered Or Remained In The United States**

The defendant may try to offer evidence of why he violated § 1326. Specifically, he could offer evidence of why he reentered the United States, why he remained here, or that he believed he was entitled to enter or remain in the country. The Court should preclude him from doing so. Evidence of *why* the defendant violated § 1326 is irrelevant to the question of *whether* he did so, the only material issue in this case.

"Relevant" evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence that is not relevant is not admissible. FED. R. EVID. 402.

Under Ninth Circuit precedent, because § 1326 is not a specific intent crime, evidence that the defendant believed that he had a right to be in the United States, even if reasonable, is not relevant and should not be admitted. *United States v. Leon-Leon*, 35 F.3d 1428, 1432 (9th Cir. 1994) (affirming court's decision to exclude evidence that defendant had green card when defendant offered it to establish that he reasonably believed he had permission to reenter United States). Similarly, any evidence that the defendant believed that he was not required to obtain the permission from the Attorney General, or his designated successor at the Secretary of the Department of Homeland Security, before re-entering the United States or that he incorrectly believed that he had permission to enter the country is legally insufficient, and such an argument is improper. *See United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109-10 (9th Cir. 2000).

Therefore, any reason *why* the defendant reentered and remained in the United States, and any belief that he was justified in doing so, are irrelevant to whether he violated §1326.

### I. The Court Should Prohibit Any Reference To The Defendant's Background And Prior Residency

The defendant may attempt to introduce evidence about his family or his prior residence – albeit illegal – in the United States. This information is irrelevant to this case and should be excluded. FED. R. EVID. 402 (irrelevant evidence is not admissible). Such evidence would also be a blatant play for sympathy and jury nullification.

The Ninth Circuit has specifically rejected the use of evidence of family circumstances and prior residency in § 1326 cases. In *United States v. Ibarra*, 3 F.3d 1333 (9th Cir. 1993) the defendant appealed an order precluding him from introducing evidence of his prior legal status in the United States and the citizenship of his wife, mother, and children. The Ninth Circuit affirmed the ruling, holding that the evidence was irrelevant because the defendant had failed to demonstrate how the evidence could possibly affect the issue of his alienage. *Ibarra*, 3 F.3d at

1334, *overruled on other grounds by United States v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996).

Similarly, in *United States v. Serna-Vargas*, 917 F. Supp. 711 (C.D. Cal. 1996) the defendant filed a motion *in limine* to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a § 1326 prosecution. Specifically, the defendant sought to introduce evidence of the involuntariness of her initial residence, her continuous residency since childhood, her fluency in English, and the legal residence of immediate family members. *Id.* at 712. The court denied the defendant's motion because none of those facts was relevant to the elements required for a conviction under § 1326. *Id.* The court also noted that admission of the evidence would contradict Congress' intent because "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." *Id.* Specifically, under the immigration scheme that Congress created, an alien facing deportation may present evidence of positive equities only to administrative judges and Article III judges, not to juries. *Id.*

The Ninth Circuit Model Jury Instructions also prohibit parties from trying to influence the jury's "personal likes or dislikes, opinions, prejudices, or sympathy" and precludes parties from admitting such evidence. 9th Cir. Model Crim. Jury Instr., § 3.1 (2003).

Accordingly, any evidence relating to the defendant's prior residency and background, including his United States citizen children and spouse, should be precluded at trial. Additionally, the Court should preclude the defendant and his counsel from indicating to the jury, by any means, the presence of his wife, children, other family members, and friends, if present in the courtroom, as such a reference would constitute nothing more than an attempt at jury nullification based on sympathy. The court should require the parties to redact exhibits to ensure that no such evidence is admitted.

**J. The Court Should Prohibit Any Collateral Attack On The Defendant's Prior Deportations Or Removals**

As the Ninth Circuit has held, the lawfulness of the defendant's prior deportations or removals is not an element of the offense in a § 1326 prosecution. *United States v. Alvarado-*

*Delgado*, 98 F.3d 492, 493 (9th Cir. 1996). Therefore, evidence about the lawfulness of the defendant's deportations or removals should not be submitted to the jury. For example, the defendant should be prohibited from referring to rights he waived at his deportation hearings, audio tapes of his hearings, and whether he had counsel at his deportation hearings. If the defendant wanted to contest the lawfulness of his deportation, he should have filed a motion to dismiss the Indictment. Because the lawfulness of the prior deportation is not an element of § 1326, the defendant does not have a right to have the issue determined by a jury.

**K. The Court Should Prohibit Any Reference To Penalties**

The Court should preclude the defendant from making any reference to any potential penalties he could face if he is convicted of this offense. Information about penalties draws the attention of the jury away from its chief function as the trier-of-fact. *See United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995). Evidence about punishment opens the door to compromise verdicts and confuses the issues to be decided. *Id.* Simply put, "it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991). The Ninth Circuit has recognized this by prohibiting the jury from considering punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt. 9th Cir. Model Crim. Jury Instr., § 7.4 (2003).

Any such argument or reference would be an improper attempt to have the jury unduly influenced by sympathy for the defendant or by prejudice against the government and law enforcement agencies. Sentencing, however, is exclusively the province of the Court.

**L. The Court Should Preclude All Witnesses Except The Case Agent**

Under Federal Rule of Evidence 615(3), a person whose presence is shown by a party to be "essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in this prosecution, ICE Senior Field Training Officer Cecyle

//

//

//

//

Andrews, has been critical in investigating the defendant's crimes and is an integral part of government's trial team. All other witnesses should be excluded.

DATED: August 13, 2008

Respectfully submitted,
JOSEPH P. RUSSONIELLO
United States Attorney

/s/
TAREK J. HELOU
Assistant United States Attorney

TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL HISTORY . . . . . 1

II. STATEMENT OF FACTS . . . . . 1

III. MOTIONS *IN LIMINE* . . . . . 2

A. The Court Should Admit Documents From The Defendant's A-File As Self-Authenticating Public Records . . . . . 2

B. The Court Should Admit Evidence That The Defendant Was "Found In The United States" At San Mateo County Jail, Including Evidence Related To His May 24, 2008 Arrest . . . . . 3

C. The Court Should Admit The Defendant's Prior Statements . . . . . 4

1. The Defendant's May 13, 2002 Sworn Statement . . . . . 4

2. The Defendant's February 21, 2003 Plea Agreement . . . . . 5

3. The Defendant's February 21, 2003 Application For Permission To Enter Plea Of Guilty And Order Accepting Plea . . 5

4. Statements That The Defendant Made At His February 21, 2003 Change Of Plea Hearing . . . . . 5

5. Statements That The Defendant Made At His May 15, 2003 Sentencing Hearing . . . . . 5

6. The Defendant's May 29, 2008 Sworn Statement . . . . . 5

7. The Defendant's Second May 28, 2008 Sworn Statement . . . . . 6

D. The Court Should Admit Evidence Of The Defendant's Previous Illegal Reentry Conviction . . . . . 6

1. The Court Should Admit Documents Related To The Defendant's Previous Illegal Entry Conviction As Substantive Evidence . . . . . 6

2. The Court Should Admit Documents Related To The Defendant's Previous Illegal Entry Conviction As Impeachment Evidence . . . . . 7

E. The Court Should Admit Evidence Of The Defendant's Previous Drug Possession Convictions . . . . . 8

F. The Court Should Admit Expert Testimony From A Fingerprint Examiner . . . . . 9

G. Admit The Certificate Of Non-Existence Of Record As The Absence Of A Public Record . . . . . 10

H. The Court Should Prohibit Any Reference To Why The Defendant Reentered Or Remained In The United States . . . . . 10

I. The Court Should Prohibit Any Reference To The Defendant's Background And Prior Residency . . . . . 11

J. The Court Should Prohibit Any Collateral Attack On The Defendant's Prior Deportations Or Removals . . . . . 12

K. The Court Should Prohibit Any Reference To Penalties . . . . . 13

L. The Court Should Preclude All Witnesses Except The Case Agent . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Crawford v. Washington*, 124 S. Ct. 1354 (2004) . . . . . 10

*United States v. Alonso*, 48 F.3d 1536 (9th Cir. 1995) . . . . . 9

United States v. Alvarado-Delgado, 98 F. 492 (9th Cir. 1996) . . . . . 12

*United States v. Bahena-Cardenas*, 411 F.3d 1067 (9th Cir. 2005) . . . . . 3

*United States v. Bejar-Matrecious*, 618 F.2d 81 (9th Cir. 1980) . . . . . 6

*United States v. Calderon-Segura*, 512 F.3d 1104 (9th Cir. 2008) . . . . . 9

*United States v. Cervantes-Flores*, 421 F.3d 825 (9th Cir. 2005) . . . . . 10

*United States v. Contreras*, 63 F.3d 852(9th Cir. 1995) . . . . . 2

*United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) . . . . . 8

*United States v. Frank*, 956 F.2d 872 (9th Cir. 1991) . . . . . 13

*United States v. Hernandez-Rojas*, 617 F.2d 533 (9th Cir. 1980) . . . . . 2

*United States v. Ibarra*, 3 F.3d 1333 (9th Cir. 1993) . . . . . 11

*United States v. Lennick*, 18 F.3d 814 (9th Cir. 1994) . . . . . 9

*United States v. Leon-Leon*, 35 F.3d 1428 (9th Cir. 1994) . . . . . 11

*United States v. Loyola-Dominguez*, 125 F.3d 1315 (9th Cir. 1997) . . . . . 2, 3

*United States v. Martinez-Martinez*, 369 F.3d 1076 (9th Cir. 2004) . . . . . 7

*United States v. Mateo-Mendez*, 215 F.3d 1039 (9th Cir. 2000) . . . . . 2, 10

*United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) . . . . . 13

*United States v. Ramirez-Valencia*, 202 F.3d 1106 (9th Cir. 2000) . . . . . 11

*United States v. Serna-Vargas*, 917 F. Supp. 711 (C.D. Cal. 1996) . . . . . 12

*United States v. Sotelo*, 109 F.3d 1446(9th Cir. 1997) . . . . . 2

## FEDERAL STATUTES

8 U.S.C. § 1101 . . . . . 8

8 U.S.C. § 1326 . . . . . 1

18 U.S.C. § 924 . . . . . 8

21 U.S.C. § 802 . . . . . . . . 9

STATE STATUTES

California Health and Safety Code § 11350(a) . . . . . . . . 8, 9

FEDERAL RULES

Fed. R. Evid. 401 . . . . . . . . 11
Fed. R. Evid. 402 . . . . . . . . 11
Fed. R. Evid. 404 . . . . . . . . 4
Fed. R. Evid. 703 . . . . . . . . 9
Fed. R. Evid. 704 . . . . . . . . 9
Fed. R. Evid. 801 . . . . . . . . 4
Fed. R. Evid. 803 . . . . . . . . 10